IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

BRENT JACOBY, #291 560,           )
                                  )
    Jacoby,                       )
                                  )
    v.                            )      CASE NO. 2:15-CV-543-MHT
                                  )      [WO]
WARDEN JONES, *et al.*,           )
                                  )
    Defendants.                   )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

Plaintiff Brent Jacoby, an inmate in the custody of the Alabama Department of

Corrections ("ADOC"), files this *pro se* 42 U.S.C. § 1983 action alleging that prison

officials at the Ventress Correctional Facility ("Ventress") are liable for constitutional

claims arising from various conditions at the facility between June and August of 2015.[1]

Jacoby brings suit against Warden Karla Jones, Jimmy Thomas, Pamela Harris, Brian

Gordon, and Curtis Simmons.  He seeks injunctive relief and damages. Doc. 6.

Defendants filed an answer, special report and supporting evidentiary materials

addressing Jacoby's claims for relief. Doc. 31.  In these filings, Defendants deny that they

acted in violation of Jacoby's constitutional rights. Doc. 31.  Upon receipt of Defendants'

special report, the court issued an order directing Jacoby to file a response, including sworn

affidavits and other evidentiary materials, and specifically cautioning Jacoby that "the

court may at any time thereafter and without notice to the parties (1) treat the special report

---

[1] In accordance with the prior proceedings and orders entered, this matter is before the court on Jacoby's
amended complaint filed on September 22, 2016. Doc. 6.

and any supporting evidentiary materials as a motion for summary judgment." Doc. 32 at 2. Jacoby responded to Defendants' special report by filing a response titled "Plaintiff's Memorandum of Law in Opposition to Defendants' Motion/Special Report for Summary Judgment." Doc. 35. The response is not a sworn statement and thus does not meet the requirements of Federal Rule of Civil Procedure 56(e)(1), which requires that an affidavit "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." This failure on Jacoby's part means that the court cannot consider this response as evidence sufficient to create a genuine issue of material fact. *See* Fed. R. Civ. P. 56(e)(1); *Holloman v. Jacksonville Housing Auth.*, 2007 WL 245555, *2 (11th Cir. Jan. 30, 2007) (noting that "unsworn statements, even from *pro se* parties, should not be considered in determining the propriety of summary judgment"); *Pfeil v. Rogers*, 757 F.2d 850, 859 (7th Cir. 1986); *Dickinson v. Wainwright*, 626 F.2d 1184, 1185 (5th Cir. 1980). To the extent affidavits or evidentiary submissions attached to Jacoby's unsworn opposition do meet the requirements of Rule 56(e)(1) (*see* Doc. 35 at attachments), the court has considered these materials but finds they do not demonstrate there is any genuine issue of material fact. *See* Doc. 35 at 2. The court will treat Defendants' report as a motion for summary judgment, and resolve this motion in favor of Defendants.

## I. STANDARD OF REVIEW

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment

2

as a matter of law." *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").   The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).   The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence to support some element on which it bears the ultimate burden of proof. *Id*. at 322−24.

Defendants have met their evidentiary burden.   Thus, the burden shifts to Jacoby to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [by citing to materials in the record including affidavits, relevant documents or other materials], the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it . . . ."); *see also Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014) (holding that the court should consider facts pleaded in a plaintiff's sworn complaint when considering summary judgment).   A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable factfinder to return a

verdict in its favor. *Greenberg*, 498 F.3d at 1263. The evidence must be admissible at trial, and if the nonmoving party's evidence "is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986); Fed. R. Civ. P. 56(e). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice . . . ." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252). Only disputes involving material facts are relevant and materiality is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248.

To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255; *see also United States v. Stein,* 881 F.3d 853 (11th Cir. 2018) (holding that a plaintiff's self-serving and uncorroborated, but not conclusory, statements in an affidavit or deposition may create an issue of material fact which precludes summary judgment); *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013) ("To be sure, [plaintiff's] sworn statements are self-serving, but that alone does not permit us to disregard them at the summary judgment stage. . . . 'Courts routinely and properly deny summary judgment on the basis of a party's sworn testimony even though it is self-serving.'") (citations omitted). "Conclusory, uncorroborated allegations by a plaintiff in

4

an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well-supported summary judgment motion." *Solliday v. Fed. Officers*, 413 F. App'x 206, 207 (11th Cir. 2011) (citing *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990)); *see also Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (holding that conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the court, a *pro se* litigant does not escape the burden of establishing a genuine dispute of material fact. *See Beard v. Banks*, 548 U.S. 521, 525 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, a plaintiff's *pro se* status alone does not mandate that this court disregard elementary principles of production and proof in a civil case. Here, Jacoby fails to demonstrate a genuine dispute of material fact so as to preclude summary judgment on his claims against Defendants. *See Matsushita*, 475 U.S. at 587.

## II. DISCUSSION

### A.    Absolute Immunity

Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, or Congress has abrogated the state's immunity. Alabama has not waived its Eleventh Amendment immunity, and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their

official capacities." *Lancaster v. Monroe Cnty.*, 116 F.3d 1419, 1429 (11th Cir. 1997) (citing *Pennhurst St. Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Seminole Tribe v. Florida*, 517 U.S. 44, 59 (1996); *Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990)).

In light of the foregoing, Defendants are state actors entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Id.*; *see also Jackson v. Ga. Dept. of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994); *Parker v. Williams*, 862 F.2d 1471 (11th Cir. 1989).

## B.    Injunctive Relief

Jacoby is no longer incarcerated at Ventress.  The transfer or release of a prisoner renders moot any claims for injunctive or declaratory relief. *See Cnty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979); *see also Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985) (holding that past exposure even to illegal conduct does not in and of itself show a pending case or controversy regarding injunctive relief if unaccompanied by any continuing present injury or real and immediate threat of repeated injury).  Because the records before the court establish that Jacoby is no longer incarcerated at Ventress, his request for equitable relief is moot.

## C.    Qualified Immunity

Jacoby claims that the Defendants violated his constitutional rights by exposing him to unsafe and unsanitary living conditions, failing to protect him from inmate assaults, subjecting him to false disciplinary action, subjecting him to improper housing assignments, and retaliating against him for filing prison grievances. Doc. 6.  Defendants

6

assert that they are entitled to qualified immunity on Jacoby's claims against them in their individual capacities for monetary damages. Doc. 31 at 14–16.

Qualified immunity offers complete protection from civil damages for government officials sued in their individual capacities if their conduct does not violate "'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Qualified immunity is not merely a defense against liability but rather immunity from suit, and the Supreme Court "repeatedly [has] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009) (quotation marks and citations omitted). To receive qualified immunity, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).  Here, there is no dispute that Defendants were acting within the course and scope of their discretionary authority when the incidents occurred.  Jacoby must, therefore, establish facts that, when read in a light most favorable to him, show that Defendants are not entitled to qualified immunity. *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003).

To satisfy his burden, a plaintiff must show two things: (1) that a defendant committed a constitutional violation and (2) that the constitutional right a defendant violated was "clearly established." *Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1332 (11th Cir. 2004). "To be clearly established, a right must be sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right.  In

other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012) (internal quotation marks and citations omitted).  For right to be clearly established, either (1) "a materially similar case has already been decided"; (2) there is "a broader, clearly established principle that should control the novel facts of the situation"; or (3) "the conduct involved in the case may so obviously violate the constitution that prior case law is unnecessary." *Gaines v. Wardynski*, 871 F.3d 1203, 1208–09 (11th Cir. 2017) (internal quotation marks and citations omitted).  The controlling authority is from "the United States Supreme Court, the Eleventh Circuit, or the highest court in the relevant state." *See id.* at 1209.  "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (quotation marks and citations omitted).  The Eleventh Circuit "has stated many times that if case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Gaines*, 871 F.3d at 1210.  "Exact factual identity with the previously decided case is not required, but the unlawfulness of the conduct must be apparent from pre-existing law." *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011).  If a plaintiff cannot satisfy his burden, the defendants are entitled to qualified immunity, and the court may analyze the elements "in whatever order is deemed most appropriate for the case." *Rehberg v. Paulk*, 611 F.3d 828, 839 (11th Cir. 2010) (citing *Pearson*, 555 U.S. at 241–42).

**D.      Conditions[2]**

Jacoby alleges a violation of his Eighth Amendment rights regarding the conditions

of his confinement at Ventress.  Specifically, Jacoby alleges that (1) from June 12, 2015 to

August 1, 2015, Defendants Jones and Thomas had a policy or custom of denying inmates

in the B-1 disciplinary dorm the right to purchase hygiene and cleaning products and to

receive outside recreation,[3] which resulted in "nasty" conditions causing him to develop a

rash; and (2) on July 9, 2015, correctional officials visited B-1 dorm, started harassing

inmates, then placed Jacoby in a one-man cell with another inmate without functioning

water (it "dribbled from the sink"), circulating air, or a window that opened and closed.

Doc. 6 at 5 & 7.

Warden Jones testified that Ventress has five dormitories (B, C, D, E, and F).  Each

dorm has four segregation cells (some are one-man segregation cells and some are two-

man segregation cells).  B-1 dorm is an open bay dorm.  It is a restricted privileges dorm

where inmates have certain privileges restricted, but they are not generally assigned to one

or two-man segregation cells. Doc. 31-2.

A record of Jacoby's movement while in custody reflects that from June 12, 2015

---

[2]  Additional allegations of constitutional violations presented in an opposition brief that were not affirmatively pleaded in the complaint are not considered because a plaintiff may not "amend" his complaint by raising new claims in opposition to summary judgment. *See Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006) (rejecting a new basis for a pending claim raised during summary judgment proceedings); *Gilmour v. Gates, McDonald & Co*., 382 F.3d 1312, 1314 (11th Cir. 2004) (finding the Rules of Civil Procedure do "not afford plaintiffs with the opportunity to raise new claims at the summary judgment stage").  The court, therefore, addresses the claims against Defendants alleged in the amended complaint, and considers the facts alleged only to the extent they support those claims. *See Chavis v. Clayton Cnty. Sch. Dist*., 300 F.3d 1288, 1291 n. 4 (11th Cir. 2002) (refusing to address a new theory raised during summary judgment because the plaintiff had not amended the complaint).
[3]  During the time period specified by Jacoby, he was housed at varying intervals in B-1 dorm and in single or double cells in administrative segregation. Doc. 31-6 at 1–4.

through July 9, 2015 he was assigned to B-1 dorm, the restricted privileges dorm (specifically, Bed B 1-17 A), after receiving a behavior citation for insubordination.[4]  From July 9, 2015 to July 14, 2015, Jacoby was assigned to D-3 dorm in a one-man cell for administrative segregation due to a disciplinary infraction he received for insubordination.[5]  He was moved to a two-man administrative segregation cell in B-6 dorm from July 14, 2015 to July 24, 2015.  A hearing was held July 20, 2015 regarding the disciplinary infraction issued July 9, 2015.  A hearing officer found Jacoby guilty of the rule infraction and sentenced him to loss of privileges for 30 days and disciplinary segregation for 30 days.  On July 23, 2015, Warden Davis reduced the sanctions and released Jacoby from segregation to the B-1 restricted privileges dorm on July 24, 2015—four days after the disciplinary hearing and one day after the sanctions were reduced.  On August 10, 2015, Jacoby was assigned to C-1 general population dorm. Doc. 31-2; Doc. 31-6 at 1–2, 13–15 & 18–20.

Defendant Jimmy Thomas, commander of the segregation area at Ventress during the time relevant to the complaint, submitted an affidavit explaining the conditions in administrative and disciplinary segregation:

> Both in administrative and disciplinary segregation, pursuant to ADOC policy, inmates are allowed to possess stamps, stationary, and a writing instrument.  As far as I am aware, Jacoby was not denied these materials. Indigent inmates are issued two stamps per week for legal mail.  I do not know if Jacoby is indigent or if he requested these materials, but [if] he is and a request was made, they should have been provided.

---

[4] Jacoby received a behavior citation on June 12, 2015 after telling a correctional officer to "f**k off" when ordered to return to D dorm. Doc. 31-6 at 13–15.

[5] On July 9, 2015, Jacoby told Warden Jones, "You ain't s**t."  The warden issued Jacoby a disciplinary infraction for insubordination and breach of inmate rules. Doc 31-6 at 18–20.

Seg inmates are also issued personal hygiene items and are allowed to take a five minute shower every other day.  As far as I am aware, Jacoby was not denied these materials or the shower benefit.

Seg inmates are given cleaning supplies and ordered to clean their cell every day.  Dorm cleaners clean the common shower areas.

Seg inmates are allowed to exercise five hours per seven day period.  As far as I am aware, Jacoby was not denied this benefit.

Seg inmates are allowed to possess reading materials, though limited in number.  As far as I am aware, Jacoby was not denied these materials (if he possessed them).

As far as I am aware, the water works in every seg cell and the circulation system functions adequately.  If there are maintenance issues, work orders are turned in to the maintenance department and repairs are made.  Of course, summers in south Alabama are hot for all residents.  In times of extreme heat, extra precautions are taken like the distribution of ice.

Two inmates would not have been placed in a one man seg cell.  There is only one bed in a one man seg cell.

Doc. 31-3; *see also* Doc. 31-2.

The United States Constitution prohibits conditions of confinement that result in the wanton and unnecessary infliction of pain. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). Specifically, the Constitution is concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Id*. at 348 (citation omitted).  Only actions which deny inmates "the minimal civilized measure of life's necessities" are grave enough to establish constitutional violations. *Id.* at 347.  Prison conditions which may be "restrictive and even harsh . . . are part of the penalty that criminal offenders pay for their offenses against society" and, therefore, do not necessarily constitute cruel and unusual punishment within the meaning of the Eighth Amendment. *Id*. Conditions, however, may not be "barbarous" nor may they contravene society's "evolving standards of decency." *Id*. at 345–46.  "[T]he Constitution does not mandate comfortable prisons.  If prison conditions are merely restrictive and even harsh, they are part of the

penalty that criminal offenders pay for their offenses against society.  Generally speaking, prison conditions rise to the level of an Eighth Amendment violation only when they involve the wanton and unnecessary infliction of pain." *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004) (internal quotation marks and citations omitted).  Although the Constitution "does not mandate comfortable prisons . . . neither does it permit inhumane ones." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  Thus, it is settled law that the conditions under which a prisoner is confined are subject to constitutional scrutiny. *Helling v. McKinney*, 509 U.S. 25 (1993).

A prison official has a duty under the Eight Amendment to "provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates." *Farmer*, 511 U.S. at 832 (internal quotation marks and citation omitted); *Helling*, 509 U.S. at 31–32.  For liability to attach, the challenged prison condition must be "extreme" and must pose "an unreasonable risk of serious damage to [the inmate's] future health." *Chandler*, 379 F.3d at 1289–90.  To demonstrate an Eighth Amendment violation regarding conditions of confinement, a prisoner must satisfy both an objective and a subjective inquiry. *Farmer*, 511 U.S. at 834.  With respect to the objective elements, an inmate must first show "an objectively substantial risk of serious harm . . . exist[ed].  Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner." *Marsh v. Butler Cnty.*, 268 F.3d 1014, 1028–29 (11th Cir. 2001).  As to the subjective elements, "the official must both be aware of facts from which the inference could be drawn that a

substantial risk of serious harm exists, and he must also draw the inference. . . . The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.' . . . [A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 837–38; *Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999) ("Proof that the defendant should have perceived the risk, but did not, is insufficient."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (same).  The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety. . . . It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

Jacoby alleges that Defendants Jones and Thomas have a policy of denying inmates in B1 segregation dorm and segregation cells the opportunity to purchase certain necessary items.  He complains that for a 45-day period he had inadequate outside recreation and was not allowed to purchase hygiene articles, cleaning supplies, stamps, or stationary. Doc. 6.

Defendants deny that Jacoby was subjected to cruel and unusual punishment so as to violate the Constitution. Doc. 31.  The unrefuted evidence reflects that inmates housed in segregation, whether in a cell or in the restricted privileges dorm, are subject to certain restrictions and loss of various privileges including loss of store privileges. Docs. 31-2, 31-3, 31-6 & 35-5.  Jacoby, however, has no constitutional right to buy items from the

institutional store regardless of his housing assignment and, therefore, Defendants' adherence to or enforcement of institutional procedure in this regard, without more, did not violate any constitutional right to which he is entitled. *See Am. Manuf. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40 (1999) (holding that to state a viable claim for relief in a 42 U.S.C. § 1983 action the conduct must have deprived Plaintiff of rights, privileges or immunities secured by the Constitution); *see also Parratt v. Taylor*, 451 U.S. 527 (1981).

Defendants Jones and Thomas testified that while assigned to segregation Jacoby was issued supplies, including hygiene and cleaning items; he could have a limited amount of reading material; he had the ability to exercise for five hours per week; he could shower every other day; and he was allowed to have a writing instrument, paper, and stamps, and that he could request to receive these items free of charge if he could not afford them.[6] Docs. 31-2 & 31-3; *see also* Doc. 35-5 at 5. Defendants also testified that they are unaware of any non-functioning water supply in segregation cells or issues with the air circulation system, that repairs are made if there are any maintenance issues, and that they undertake precautions such as distributing ice during times of extreme heat. Docs. 31-2 & 31-3. Finally, because there is only one bed in a one-man segregation cell, Defendants testified that two inmates would not be placed in a one-man segregation cell. Docs. 31-2 & 31-3.

The conditions about which Jacoby complains are an unfortunate part of prison life in general. While the Constitution does not mandate comfortable prisons, the conditions

---

[6] Regarding Jacoby's challenge to any restrictions on the ability to buy stamps and stationary during the challenged time period, the record does not reflect any allegation that the shortcomings resulted in an "actual injury" necessary to establish a constitutional violation. *See Bounds v. Smith*, 430 U.S. 817, 825 (1977); *Lewis v. Casey*, 518 U.S. 343 (1996).

14

under which inmates are housed must not be inhumane. *Mathews v. Crosby*, 480 F.3d 1265, 1269 (11th Cir. 2007).   Although Jacoby challenges the conditions in segregation at Ventress, he does not establish that the above-described conditions—including those that lead to an itchy, painful, burning rash[7]—were extreme, denied him the minimal civilized measure of life's necessities, or subjected him to a wanton and unnecessary infliction of pain. *Wilson*, 501 U.S. at 298–99; *Rhodes*, 452 U.S. at 347.

As explained above, the Eighth Amendment prohibits cruel and unusual punishments but "does not outlaw cruel and unusual conditions." *Farmer*, 511 at 837 (internal quotation marks omitted).  The living conditions within a correctional facility will constitute cruel and unusual punishment when the conditions involve or result in "wanton and unnecessary infliction of pain, [or] . . . [are] grossly disproportionate to the severity of the crime warranting imprisonment." *Rhodes*, 452 U.S. at 347.  "Conditions . . . alone or in combination, may deprive inmates of the minimal civilized measure of life's necessities. Such conditions could be cruel and unusual under the contemporary standard of decency . . . . But conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional." *Id*.

Here, the court finds that the challenged conditions may have been uncomfortable, inconvenient, unpleasant and objectionable, but they were not so extreme as to violate the Eighth Amendment. *Chandler v. Baird*, 926 F.2d at 1289 (11th Cir. 1991).  The existence

---

[7] Jacoby submits medical records including a lab report dated July 6, 2015 which reflects that a skin biopsy taken from his buttocks on July 1, 2015 was diagnosed as consistent with spongiotic dermatitis/mild spongiotic dermatitis. Doc. 35-2 at 7 & 9.

of the problems identified by Jacoby cannot be characterized as "abuses" nor is the fact of their existence sufficient to show a constitutional violation. Furthermore, the totality of Jacoby's claims before this court do not amount to conditions that fall below applicable constitutional standards because he fails to demonstrate that the challenged conditions had "a mutually enforcing effect that produce[d] the deprivation of a single, identifiable human need." *Wilson*, 501 U.S. at 304. "To say that some prison conditions may interact in this fashion is a far cry from saying that all prison conditions are a seamless web for Eighth Amendment purposes." *Id*. And Jacoby has not presented specific facts or produced any evidence indicating that Defendants subjectively knew of a substantial risk of harm to his health or safety and disregarded that risk so as to establish deliberate indifference. *Id*.; *see Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003); *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999). Defendants are entitled to qualified immunity on this claim.

**E.    Placement in the Restricted Privilege Dorm—Due Process**

Jacoby challenges his placement in "lockup" from June to August of 2015, claiming Defendants had no justifed or legal reason to keep him segregated. He maintains that from June 12, 2015 to July 9, 2015 Defendant Jones refused to remove him from the restricted privilege dorm and taunted him about being housed there. On July 9, 2015, Jacoby states that Jones issued him a "bogus" disciplinary infraction that resulted in his placement on administrative segregation. Doc. 6 at 6–7.

Jacoby's due process challenge to his institutional housing assignments entitles him to no relief. The Supreme Court has identified two circumstances in which a prisoner, who already has been deprived of his liberty in the ordinary sense, can be further deprived of

16

his liberty such that due process is required:

> The first is when a change in a prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court. The second is when the state has consistently given a certain benefit to prisoners (for instance, via statute or administrative policy), and the deprivation of that benefit "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."

*Bass v. Perrin*, 170 F.3d 1312, 1318 (11th Cir. 1999) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)) (remaining citations omitted).

The United States Constitution does not in and of itself give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement. *Sandin*, 515 U.S. at 485–86 (noting that temporary confinement of inmate in disciplinary segregation does not implicate a constitutionally protected liberty interest); *Matthews v. Moss*, 506 F. App'x 981, 983 (11th Cir. 2013) (citing *Sandin*, 515 U.S. at 485–87) (affirming district court dismissal of due process claims because "administrative confinement for short periods of 24 days and 18 days does not impose an 'atypical, significant deprivation' sufficient to give rise to a constitutionally protected liberty interest"); *Hoskins v. Lenear*, 395 F.3d 372, 375 (7th Cir. 2005) ("The punishments [inmate] suffered because of his disciplinary conviction (demotion in status, segregation, and transfer) raise no due process concerns."); *see also Meachum v. Fano*, 427 U.S. 215, 225 (1976) (holding that there is no liberty interest arising from the Due Process Clause in transfer from low-to maximum-security prison because "[c]onfinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose"). An inmate in the Alabama prison system has no constitutionally protected interest in the privileges bestowed

upon him or confinement in the least restrictive prison environment because the resulting restraints are not so severe as to exceed the sentence imposed upon him. *See Sandin*, 515 U.S. at 485.  In addition, a temporary denial of privileges does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*. at 484.  Thus, the deprivations imposed upon Jacoby did not "exceed the sentence [imposed by the trial court] in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force." *Id*.

This court therefore must determine whether the actions at issue in Jacoby's complaint involved the deprivation of a state-created liberty interest as defined by the standard set forth in *Sandin*.  As the Supreme Court has observed,

> *Sandin* involved prisoners' claims to procedural due process protection before placement in segregated confinement for 30 days, imposed as discipline for disruptive behavior.  *Sandin* observed that some of our earlier cases, *Hewitt v. Helms*, 459 U.S. 460, 103 S. Ct. 864, 74 L. Ed. 2d 675 (1983), in particular, had employed a methodology for identifying state-created liberty interests that emphasized "the language of a particular [prison] regulation" instead of "the nature of the deprivation."  In *Sandin*, we criticized this methodology as creating a disincentive for States to promulgate procedures for prison management, and as involving the federal courts in the day-to-day management of prisons.  For these reasons, we abrogated the methodology of parsing the language of particular regulations.
>
> [T]he search for a negative implication from mandatory language in prisoner regulations has strayed from the real concerns undergirding the liberty protected by the Due Process Clause.  The time has come to return to the due process principles we believe were correctly established in and applied in *Wolff* and *Meachum*.  Following *Wolff*, we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause.  But these interests will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

> After *Sandin*, it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves in relation to the ordinary incidents of prison life.

*Wilkinson v. Austin*, 545 U.S. 209, 222–23 (2005) (internal quotation marks and citations omitted).

Simply put, Jacoby's confinement in the restricted privileges dorm and administrative segregation for a limited period of time due to a behavioral citation and disciplinary infraction for his violation of institutional rules did not deprive him of a state-created liberty interest. *See Sandin*, 515 U.S. at 486 (holding that confinement in disciplinary segregation for 30 days did not violate the Constitution or infringe on a state-created liberty interest); *Rodgers v. Singletary*, 142 F.3d 1252, 1253 (11th Cir. 1998) (holding that confinement in segregation for two months did not deprive an inmate of a constitutionally protected liberty interest).

> With respect to [Plaintiff's] loss of canteen, telephone, [television] and visiting privileges, a liberty interest is not implicated either under the Constitution or by the State's creation.  The Court finds the Constitution does not grant an inmate a right in visitation, canteen, [television] and telephone privileges.  Moreover, the Alabama courts have determined a prisoner does not have a state-created liberty interest in store, telephone, [television] and visitation privileges.

> An inmate's ability to visit, to shop, [to watch television,] and to use the telephone is heavily restricted while in prison, as are most aspects of an inmate's life.  Such restriction is not "atypical," nor is it a "significant hardship" under the *Sandin* analysis, and is a type of [action] that should be expected by a prisoner as an incident to his criminal sentence.  Thus, [Plaintiff] does not have a liberty interest in canteen, visitation, [television] and telephone privileges to which due process attaches.

19

*Bass v. Wilson, et al.*, 2015 WL 4742473, at *5–6 (S.D. Ala. Aug. 10, 2015) (citations omitted).

Applying *Sandin*, it is clear that Jacoby's temporary loss of privileges and short-term confinement in the restricted privileges dorm and administrative segregation, "though concededly punitive, does not represent a dramatic departure from the basic conditions" of the sentence imposed upon him. *Sandin*, 515 U.S. at 485.  For these reasons, the court concludes that the challenged sanctions fail to "impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*. at 484.  Consequently, due process did not attach to Jacoby's temporary placement in the restricted privileges dorm or administrative segregation.  Defendants are entitled to qualified immunity on this claim.

**F.    Retaliation**

Jacoby alleges Defendant Jones issued him a "bogus" disciplinary notice to retaliate for Jacoby's preparation of a prison grievance that challenged Jones' treatment of inmates in B-1 dorm and the conditions under which they were housed.  Jacoby further alleges as evidence of retaliatory conduct that Jones selected a correctional guard Jacoby had previously sued to preside over his disciplinary hearing. Doc. 6 at 7.

A claim that a plaintiff was penalized for exercising a constitutional right is properly considered under the First Amendment. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 387 (6th Cir. 1999).  The First Amendment protects inmates from retaliation by prison officials for filing administrative grievances and lawsuits. *Wright v. Newsome*, 795 F.2d 964 (11th Cir. 1986); *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003).  "The gist of a retaliation

claim is that a prisoner is penalized for exercising a right of free speech." *Thomas v. Evans*, 880 F.2d 1235, 1242 (11th Cir. 1989); *Farrow*, 320 F.3d at 1248.  Conclusory allegations of retaliation, however, cannot demonstrate the existence of every element required for establishing retaliation. *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1266 (11th Cir. 2009), *overruled on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449 (2012) (stating that "in testing the sufficiency of the plaintiff's allegations, we do not credit . . . conclusory allegations as true"); *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003) (observing that "we are careful to require non-conclusory allegations" because prisoner retaliation claims are prone to abuse).

In ruling on an inmate's First Amendment retaliation claim, courts use a burden shifting analysis. *Moton v. Cowart*, 631 F.3d 1337, 1341–42 (11th Cir. 2011).  A plaintiff must establish three elements: "(1) his speech or act was constitutionally protected; (2) the defendant's retaliatory conduct adversely affected the protected speech; and (3) there is a causal connection between the retaliatory actions and the adverse effect on speech." *Id*. at 1341 (internal quotations and citations omitted); *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008); *Thaddeus-X*, 175 F.3d at 397.  Regarding the causation prong, the court "asks whether the defendants were subjectively motivated" by the plaintiff's protected act. *Smith*, 532 F.3d at 1278.  If the plaintiff shows that "his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant." *Moton*, 631 F.3d at 1341–42 (citing *Smith*, 532 F.3d at 1278).  Upon production of evidence demonstrating a legitimate reason for the conduct or actions in question, the plaintiff, who has the ultimate burden of proof, must show that there is a genuine dispute of material fact concerning the

defendant's defense. *See Osterback v. Kemp*, 300 F.Supp.2d 1238, 1254 (N.D. Fla. 2003). Because any adverse action taken against a prisoner by a prison official might be characterized by the inmate as a retaliatory act, federal courts must "carefully scrutinize" retaliation claims brought by prisoners challenging adverse actions of correctional personnel, *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995), and should

> approach prisoner claims of retaliation with skepticism and particular care. This is [necessary because prisoners'] . . . claims of retaliation are . . . easily fabricated [and] pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration.  This is so because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized [by the prisoner] as a constitutionally proscribed retaliatory act.

*Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds by, Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)).

Jacoby was placed on administrative segregation after being charged with insubordination by Defendant Jones on July 9, 2015.  The record evidence reflects that as Jones walked through B-1 dorm on that date Jacoby told her, "You ain't s**t."  Jacoby was served with a disciplinary notice for insubordination later that day, and received a disciplinary hearing on July 20, 2015, during which Jones and Jacoby testified.  After this proceeding, the hearing officer determined that Jacoby was guilty of the disciplinary charge and sanctioned him with 30 days of disciplinary segregation and a 30-day loss of privileges. Warden Davis later reduced the loss of privileges to 14 days and reversed his assignment to disciplinary segregation. Doc. 31-6 at 6 & 18–20.

Jones denies engaging in any retaliatory conduct directed at Jacoby.  She claims that

Jacoby merely received the disciplinary action based on his behavior.  She affirms that she would not retaliate against an inmate for filing a lawsuit or grievance nor would she allow her staff to assign an inmate to the restricted privileges dorm or segregation on that basis. Jones further denies selecting any particular hearing officer for Jacoby's disciplinary hearing.  She denies knowing who Jacoby has sued and testified that she does not have time to track the inmates who have filed suit against her or her staff. Docs. 31-2 & 31-6.

Jacoby's filing of an inmate grievance regarding prison conditions and lawsuits constitutes protected conduct under the First Amendment, satisfying the first element for a First Amendment retaliation claim.  Regarding the second element, the court finds that Jacoby fails to indicate how Jones deterred him from exercising his First Amendment rights. *See Bennett*, 423 F.3d at 1250 (internal citations omitted) (holding that a "plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from exercise of First Amendment rights").  "A prisoner does not automatically cast doubt upon an institutional decision, nor is the decision 'subject to exhaustive challenge,' solely because he was engaged in a First Amendment right." *Cranford v. Hammock*, 2010 WL 916031, *8 (N.D. Fla. 2010) (quoting *Adams v. James*, 784 F.2d 1077, 1082 (11th Cir. 1986)).

Jacoby did receive a disciplinary infraction on July 9, 2018, but Jones has shown that there was a non-retaliatory basis for this action.  Jacoby has not come forward with evidence to dispute Jones' position or show that the disciplinary proceeding for a violation of institutional rules was done out of retaliation rather than a legitimate interest in governing inmate behavior.  Jacoby has submitted no direct evidence that his prison

grievance or other legal activities were the motivating factor in his disciplinary action, and nothing in the record suggests the infraction was a pretext for Jones to punish him for his protected activities. Jones has submitted admissible evidence tending to prove that her actions were predicated not on a retaliatory motive, but on Jacoby's failure to conform to institutional rules governing inmate conduct.

Furthermore, an inmate cannot state a claim for retaliatory disciplinary proceedings where the "discipline [was] imparted for acts that a prisoner was not entitled to perform." *See O'Bryant v. Finch*, 637 F.3d 1207, 1215 (11th Cir. 2011) ("[A] prisoner cannot maintain a retaliation claim when he is convicted of the actual behavioral violation underlying the alleged retaliatory false disciplinary report and there is evidence to sustain the conviction."); *Orebaugh v. Caspari*, 910 F.2d 526, 528 (8th Cir. 1990) (finding that an inmate cannot state a claim for retaliatory disciplinary proceedings where the "discipline [was] imparted for acts that a prisoner was not entitled to perform"); *Romansky v. Stickman*, 147 F. App'x 310 (3d Cir. 2005) (finding that where a prisoner is found guilty of a disciplinary infraction he does not state a claim for retaliation against the officer initiating the proceedings). In this case, the record shows that Jacoby received due process during the disciplinary proceedings and that there was some evidence to support the determination reached by the hearing officer. *See Wolff v. McDonnell*, 418 U.S. 539 (1974); *Superintendent v. Hill*, 472 U.S. 445 (1985). Simply put, there is no evidence of a causal link between Jacoby's First Amendment activity and the alleged retaliation. His allegation that Jones had no reason to issue the July 9, 2015 disciplinary infraction for insubordination and simply retaliated against him for filing grievances or lawsuits regarding prison

conditions is insufficient and unsupported by the record. *O'Bryant*, 637 F.3d at 1215.  Jones

is entitled to qualified immunity on Jacoby's First Amendment retaliation claim.

## G.   False Disciplinary

Jacoby challenges as false both the insubordination disciplinary action Jones issued

on July 9, 2015 and a disciplinary action Defendant Harris issued on September 16, 2015,

charging Jacoby with assault on a person associated with the ADOC. Doc. 3 at 7–8.  In

response, Defendants deny that they fabricated disciplinary charges against Jacoby. Docs.

31-2 & 31-4.

In *Monroe v. Thigpen*, 932 F.2d 1437 (11th Cir. 1991), the Eleventh Circuit held

that reliance on admittedly false information to deny a prisoner consideration for parole is

arbitrary and capricious treatment that violates the United States Constitution.  The *Monroe*

court, however, carefully distinguished this holding from its prior decision in *Slocum v.*

*Georgia State Board of Pardons and Paroles*, 678 F.2d 940 (11th Cir.), *cert. denied*, 459

U.S. 1043 (1982).

> Our holding today does not conflict with our earlier holding in *Slocum*,
> *supra*.  In *Slocum*, the plaintiff, who had been denied parole, made the
> conclusory allegation that the Board must have relied upon erroneous
> information because otherwise the Board would surely have granted him
> parole. *Slocum*, 678 F.2d at 941.  The plaintiff then sought to assert a due
> process right to examine his prison file for the alleged errors.  Unlike the
> instant case, in *Slocum* the state did not admit that it had relied upon false
> information in denying parole nor did the plaintiff present any evidence that
> his prison file even contained any false information.  We held in *Slocum* that
> prisoners do not state a due process claim by merely asserting that erroneous
> information may have been used during their parole consideration. *Id.* at 942.
> We also determined that prisoners do not have a due process right to examine
> their prison files as part of a general fishing expedition in search of false
> information that could possibly exist in their files. *Id*.  In the case at bar, we
> are confronted with prison authorities who admit that information contained

in Monroe's files is false and that they relied upon such information, at least
in part, to deny Monroe parole and to classify him as a sex offender.  As we
stated, the parole statute does not authorize state officials to rely on
knowingly false information in their determinations.

*Monroe*, 932 F.3d at 1442 (citing *Thomas v. Sellers*, 691 F.2d 487, 489 (11th Cir. 1982)).

*Slocum* controls the disposition of the instant false information claim.

Jones and Harris assert that the information on which they relied in the disciplinary
process is correct and an accurate representation of Jacoby's improper conduct.  Moreover,
there is no evidence before the court that these defendants furnished or relied on
information they knew to be false during any stage of the disciplinary proceeding.  Of
specific importance, there is no admission by any of the defendants that the information
utilized in levying the disciplinary infractions against Jacoby were false, incorrect,
erroneous, or perjured.  Jacoby has failed to come forward with any evidence indicating
Jones or Harris knowingly provided or used false information during the disciplinary
proceedings.  Jacoby's conclusory assertions about the potential use of false information
do nothing more than raise the specter of false information, and this mere possibility fails
to provide a basis for relief. *Monroe*, 932 F.2d at 1142; *Jones v. Ray*, 279 F.3d 944 (11th
Cir. 2001) ("[P]risoners cannot make a conclusory allegation regarding the use of [false]
information as the basis of a due process claim.").

The record in this case establishes that Jones and Harris did not provide or rely on
admittedly false information during the challenged disciplinary proceedings.  They are
entitled to qualified immunity on Jacoby's false disciplinary claim.

**H.    Violation of Internal Regulations**

To the extent Jacoby asserts that Defendants violated their internal rules or procedures regarding his disciplinary proceedings, he is entitled to no relief.  The law is settled that infringements of agency rules, regulations, or procedures do not, without more, amount to constitutional violations. *Sandin*, 515 U.S. at 484–86; *Magluta v. Samples*, 375 F.3d 1269, 1279 n.7 (11th Cir. 2004) (holding that the mere fact a governmental agency's regulations or procedures may have been violated does not, standing alone, raise a constitutional issue); *Myers v. Klevenhagen,* 97 F.3d 91, 94 (5th Cir. 1996) (claiming that prison officials have not followed their own policies and procedures does not, without more, state a constitutional violation); *United States v. Caceres,* 440 U.S. 741, 751–52 (1979) (holding that mere violations of agency regulations do not raise constitutional questions); *Weatherholt v. Bradley,* 316 F. App'x 300, 303 (4th Cir. 2009) (same); *see also Riccio v. Cnty. of Fairfax,* 907 F.2d 1459, 1459 (4th Cir. 1990) (holding that a state's failure to abide by its law is not a federal violation where state law grants more procedural rights than the Constitution requires).  For these reasons, Defendants are entitled to qualified immunity on Jacoby's claim alleging a violation of internal rules or procedures.

**I.    Failure to Protect**

Jacoby complains that Defendants failed to protect him from inmate assaults.  First, Jacoby alleges that he was housed in a one-man cell with another inmate who assaulted him on July 15, 2015.  Jacoby claims that he has been diagnosed as suffering from bipolar disorder with suicidal tendencies, is a level-two mental health patient, and should not have been housed with another inmate in a one-man cell who was on segregation for having

assaulted two inmates at one time.  Next, Jacoby maintains that on September 16, 2015 he was assaulted by an inmate with a tray while he was wiping pepper spray out of his eyes. Jacoby maintains that Defendant Harris ordered the assault and Defendant Simmons stood in the window "dusting his shoulder off" as Jacoby approached the door seeking help. Finally, Jacoby alleges that a fellow inmate named Shedrick Hogan was allowed to "continuously stalk, harass, sexually and physically on numerous occasions" and that correctional officials would not take any measures in response other than forcing Jacoby to sign living agreements "or go in a cell."  Jacoby states that numerous reports and body charts were prepared as a result of Hogan's conduct but he was never disciplined.  Jacoby claims that Defendant Gordon, a PREA compliance officer,[8] "refused to interview and stop the nonsense." Doc. 6 at 7–8.

Correctional officials may be liable under the Eighth Amendment for acting with "deliberate indifference" to an inmate's safety when the official knows that the inmate faces "a substantial risk of serious harm" and nevertheless disregards that risk by failing to take reasonable measures to abate it. *Farmer*, 511 U.S. at 828.  "A prison official's duty under the Eighth Amendment is to ensure reasonable safety, a standard that incorporates due regard for prison officials' unenviable task of keeping dangerous men in safe custody under humane conditions." *Id*. at 844–45.  "It is not, however, every injury suffered by one inmate at the hands of another that translates into a constitutional liability for prison officials responsible for the victim's safety." *Id*. at 834.

---

[8] The Prison Rape Elimination Act 2003 ("PREA") was enacted by Congress to address the problem of sexual abuse and sexual harassment within confinement settings.

"Within [a prison's] volatile 'community,' prison administrators are to take all necessary steps to ensure the safety of . . . the prison staff . . . and administrative personnel [and t]hey are under an obligation to take reasonable measures to guarantee the safety of the inmates" as well. *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984).  But the Eleventh Circuit has "stress[ed] that a 'prison custodian is not the guarantor of a prisoner's safety." *Morgan v. Toombs Cnty., Ga.*, 400 F.3d 1313 (11th Cir. 2005) (citing *Popham v. City of Talladega*, 908 F.2d 1561, 1564 (11th Cir. 1990)).  "Only [a] prison official's deliberate indifference to a known, substantial risk of serious harm to an inmate violates the Eighth Amendment." *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) (internal quotation marks and citation omitted).  "In order to state a § 1983 cause of action against prison officials based on a constitutional deprivation resulting from cruel and unusual punishment, there must be at least some allegation of a conscious or callous indifference to a prisoner's rights, thus raising the tort to a constitutional stature." *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982).

Jacoby is required to produce sufficient evidence demonstrating (1) an objectively substantial risk of serious harm; (2) subjective awareness of this risk on the part of the defendants; (3) that the defendants responded to this risk in an objectively unreasonable manner; and (4) the actions or omissions of the defendants caused him to suffer injuries. *Farmer*, 511 U.S. at 837–38; *Marsh*, 268 F.3d 1028–29; *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995).  "The known risk of injury must be a strong likelihood, rather than a mere possibility before [an official's] failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (citations and

internal quotations omitted); *Rich v. Bruce*, 129 F.3d 336, 339–40 (4th Cir. 1997) (holding that a prison official does not act with deliberate indifference, even though his actions violate prison regulations or can be described as "stupid and lazy," unless he actually makes the inference that a substantial risk of serious harm exists and then disregards that risk). An inmate "normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety." *McGill v. Duckworth*, 944 F.2d 344, 349 (7th Cir. 1991); *overruled in part on other grounds by Farmer*, 511 U.S. 825. An "official's failure to alleviate a significant risk that he should have perceived but did not," does not constitute deliberate indifference. *Farmer*, 511 U.S. at 838. As a result, mere negligence in providing protection to an inmate "does not justify liability under section 1983." *Brown*, 894 F.2d at 1537.

The undisputed evidence of record shows that Jacoby was assigned to a two-man cell from July 14 to July 24, 2015. Docs. 31-2, 31-3 & 31-6. According to Jacoby, he was assaulted by his cellmate on July 15, and his evidentiary submissions include a body chart prepared on that date. Doc. 35-2 at 3. The body chart reflects that he was seen at the medical unit for his complaint that he was assaulted by his bunkmate because Jacoby told the bunkmate he was selfish. Doc. 35-2 at 3. Medical staff observed redness to Jacoby's left shoulder and side and noted his complaints of pain to his left side, left shoulder, and right side of his neck. Doc. 35-2 at 3. Because Jacoby was already taking pain medication, medical personnel instructed him to sign up for sick call if he had additional problems. Doc. 35-2 at 3.

Regarding Jacoby's cell assignments, Defendants deny that Jacoby could have been

placed in a one-man cell with another inmate because one-man segregation cells contain only one bed. Docs. 31-2 & 31-3.  Defendant Thomas also maintains that Jacoby would not have been placed in a cell with an inmate thought by prison staff to present an excessive or unreasonable threat to his well-being. Doc. 31-3 at 6.  He further states that a medium security institution such as Ventress does house offenders convicted of violent crimes who may engage in violent acts while incarcerated. Doc. 31-1 at 6.

That inmates are exposed to the risk of violence from other prisoners does not in and of itself violate the Eighth Amendment. *Doe v. Welborn,* 110 F.3d 520, 524 (7th Cir. 1997) ("It is the reasonably preventable assault itself, rather than any fear of assault, that gives rise to a compensable claim under the Eighth Amendment.").  Insofar as Jacoby alleges that prison officials exposed him to a risk of violence solely because, as a level two mental health inmate who is bipolar and has suicidal tendencies (Doc. 6 at 6), he should have been housed in a single cell, he has not demonstrated an Eighth Amendment violation. Jones' unrefuted testimony shows that Jacoby's mental health level is one, not a two, which means he is stable, receives some outpatient treatment, is not being prescribed mediation, and can be transferred as needed. Doc. 31-2.  Jones further testified that the mental health levels ascend to nine and that a mental health level of one does not indicate that an inmate has serious mental health problems, is dangerous, or is unstable. Doc. 31-2.

Here, there is no evidence that Jacoby articulated any concern about his safety when he was transferred to the two-man cell or told any of the defendants that physical violence was imminent.  He cites no specific incidents that would have put any defendant on notice that he faced a "substantial risk of serious harm" from his cellmate while housed in the

two-man cell.  No evidence indicates Jacoby had been involved in previous altercations with the unidentified cellmate or that he had notified prison officials of a specific fear of attack before the July 15, 2015 incident.  As a result, the circumstances of the assault on Jacoby suggest that it was no more than a random act of violence, and correctional officers are not liable for random acts of violence upon an inmate under their custody. *See Estate of Davis v. Johnson*, 745 F.2d 1066, 1071 (7th Cir. 1984) (finding that the right to reasonable protection does not include the right to protection from random acts of violence).  Because Jacoby has failed to show that any defendant actually knew a substantial risk of serious harm existed when they assigned him to the two-man cell, he has failed to satisfy the subjective element of his Eighth Amendment claim. *Carter*, 352 F.3d at 1350.  Defendants are entitled to qualified immunity on this claim.

Next, Jacoby maintains that on September 16, 2015, as he was wiping pepper spray from his eyes, an inmate hit him with a tray at the direction of Defendant Harris.  He also alleges that he learned from another inmate that Harris "wanted him hurt."  Jacoby further claims Defendant Simmons stood in the window "dusting his shoulder off" as Jacoby came to the door for help. Doc. 6 at 8.  Defendant Harris affirms that a disturbance between inmates occurred in the B-1 restricted privileges dorm on September 16, 2015, but she maintains that she and other ADOC staff responded.  And Harris testifies that Jacoby threw a food tray across the room that hit her in the head and resulted in a disciplinary infraction for assault on a person associated with the ADOC.  Jacoby was found guilty of the charge. Harris further testifies:

I am not sure what Jacoby is referring to with respect to me recruiting or

authorizing another inmate to assault Jacoby with a food tray while wiping his eyes due to effect of pepper spray. I did not use chemical agent on him on the day I was assaulted (or ever). I don't know if other staff used chemical agent. I don't know if chemical agent was used on Jacoby or how it may have affected him. Nonetheless, I deny ever instructing any inmate to hurt Jacoby (or any other inmate) at any time. Jacoby may have gotten hit that day and he may have been affected by pepper spray. I don't know.

Doc. 31-4 at 5.

Defendant Simmons testifies that he has no memory of an incident similar to what Jacoby described. Simmons asserts that Jacoby "know[s] that is not true, but I cannot think of any particular situation that even comes close to what Jacoby is saying. If I had seen an inmate assaulting Jacoby (or any inmate), I would have taken the appropriate action." Doc. 31-5 at 4.

In support of his claims, Jacoby submits an affidavit from inmate Byron Phillips, who claims that on the day Harris was hit with a tray he "never saw [Jacoby] throw anything at all." Doc. 35-6 at 7. In another sworn declaration, three inmates testified that as a result of a disturbance in B-1 dorm on September 16, 2015 the guards used pepper spray, Jacoby was accidentally sprayed, he requested medical attention from Harris and another officer and was told to wait, he was then assaulted by inmates who hit him with food trays, and finally he ran to the door for help because no officers were in the dorm and nobody would open the door. Doc. 35-6 at 8. The only information indicating that Harris directed an inmate to hit Jacoby with a tray is inadmissible hearsay in the form of comments that another individual allegedly made to Jacoby. Doc. 35-6 at 8; *see Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009) ("A party may not rely upon inadmissible hearsay to oppose a motion for summary judgment."); *Morrow v. Wal–Mart Stores, Inc*., 152 F.3d

559, 563 (7th Cir. 1998) ("Hearsay is inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial.").  Taking as true Jacoby's claim that he was pepper sprayed during the September 16, 2015 disturbance, the court must determine whether any defendant acted or failed to act with a sufficiently culpable state of mind in order to evaluate whether Jacoby received a punishment in violation of the Eighth Amendment.

As explained above, a prison official is deliberately indifferent when he possesses actual, subjective knowledge of an excessive risk of harm to the prisoner's safety and nevertheless disregards that risk. *Farmer*, 511 U.S. at 837–39.  Viewed in the light most favorable to Jacoby, nothing in the record suggests that Harris or Simmons knowingly disregarded an obvious threat to his safety or acted or failed to act in a manner that placed him in harm's way during what appears to have been a spontaneous altercation between inmates. *See Johnson*, 745 F.2d at 1071 (finding the right to reasonable protection does not include the right to protection from random acts of violence).  Because there is no evidence of any deliberate indifference or reckless disregard by any defendant of Jacoby's safety during the September 16, 2015 disturbance, the court concludes that Defendants are entitled to qualified immunity on this claim.

The last incident at issue is Jacoby's allegation that Defendants failed to intervene after inmate Hogan stalked and harassed Jacoby on numerous occasions. Doc. 6 at 8. Defendants Jones, Thomas, Harris, and Simmons have submitted sworn declarations that they have no personal knowledge or involvement in any allegations involving PREA violations or Hogan.  Defendants' evidence includes a duty officer report dated June 24,

2015 indicating that Jacoby reported to Lieutenant Brian Gordon, PREA Institutional Compliance Manager, at 1:00 p.m. that inmate Shedrick Hogan "had requested sexual favor from him on three separate occasions and that he was awaken on June 21, 2015 by inmate Hogan rubbing his feet.  Inmate Jacoby further alleged that inmate Hogan had also struck him on the left side of his jaw with his closed fist on June 23, 2015.  On June 24, 2015 inmate Jacoby was escorted to the healthcare unit for a medical assessment."  The report further reflects Jones was notified of the incident at 2:05 p.m. and that Jones reassigned Hogan to Dorm E at 2:25 p.m. Docs. 31-2 to 31-5 & 31-6 at 21.

Jacoby's evidence reflects that medical personnel examined him on June 24, 2015 at 12:24 p.m. for his complaint of being punched in the side of the face. Doc. 35-2 at 2. Lieutenant Calhoun requested the body chart. Doc. 35-2 at 2.  Medical personnel observed a red area to Jacoby's jaw but noted no other injuries and prescribed no treatment.  Jacoby's evidence also includes body charts dated July 20, 2015 and September 1, 2015, both relating to his complaints of inmate assault. Doc. 35-2 at 3–4 & 14.  On July 20, 2015, medical personnel examined Jacoby for his complaint that his bunkmate assaulted him after Jacoby accused the cellmate of being selfish. Doc. 35-2 at 3.  On examination, medical personnel observed a few reddened areas on Jacoby's body that he said were painful.  No treatment was prescribed and it was noted that Jacoby was already taking pain medication. Doc. 35-2 at 3.  The September 1, 2015 body chart notes a red area on Jacoby's head and an abrasion to his neck. Doc. 35-2 at 4.  In a sick call request dated June 30, 2015, Jacoby requested to be seen because he was "choked out" by another inmate causing him to fall to the floor and hit his face. Doc. 35-2 at 13.

Jacoby's evidence includes a sworn affidavit from fellow inmate Ian Hubbard dated June 24, 2015, stating that he "witness[ed] inmate Hogan assault Jacoby on the jaw and watched officers do nothing when he reported it to Lieutenant Calhoun." Doc. 35-6 at 5. Jacoby also submits a sworn affidavit from inmate William Walden, who claims that he saw Hogan punch Jacoby in the jaw, but the officers did nothing in response other than to send Jacoby back into the dorm.  Inmate Walden further testifies that he saw Hogan choke Jacoby on June 26, 2015. Doc. 35-6 at 6.

Jacoby alleges that Defendants acted with deliberate indifference to his safety with respect to inmate Hogan's conduct and that the numerous body charts and reports support this allegation. Doc. 6 at 8.  But there is no evidence on the record that establishes deliberate indifference on the part of Defendants.  Most importantly, no evidence exists that Jacoby complained to any prison official prior to June 24, 2015 that Hogan was harassing or stalking him or that he was in danger of attack by Hogan.  The record is devoid of evidence that Jacoby notified any prison official of a previous incident or credible threat made by Hogan from which the official could infer that a substantial risk of harm existed. Specifically, there is no evidence before the court that Defendants had knowledge of any impending risk of harm, substantial or otherwise, posed by Hogan to Jacoby.  And, once Jacoby did report Hogan's assault on him, Hogan was reassigned to Dorm E. Docs. 31-2 to 31-5.

As a result, there is no evidence before the court of "an objectively substantial serious risk of harm" posed by inmate Hogan to Jacoby prior to June 24, 2015, as would be necessary to establish deliberate indifference. *Marsh*, 268 F.3d at 1028–29.

Furthermore, even if Jacoby had satisfied the objective component, his deliberate indifference claim nevertheless fails because he has presented no evidence that any defendant was subjectively aware of any risk of harm to him. *Johnson v. Boyd*, 568 F. App'x 719, 722 (11th Cir. 2014) (finding complaint properly dismissed for failure to state a claim because "[n]owhere does the complaint allege, nor can it be plausibly inferred, that the defendants subjectively foresaw or knew of a substantial risk of injury posed by [inmate-attacker]"); *Murphy v. Turpin*, 159 F. App'x 945, 948 (11th Cir. 2005) (affirming dismissal where the plaintiff "alleged no facts indicating that any officer was aware of a substantial risk of serious harm to him from [the inmate who actually attacked him] and failed to take protective measures"); *Johnston*, 135 F. App'x at 377 (holding that defendants were entitled to summary judgment because Plaintiff provided no evidence that prison officials "had subjective knowledge of the risk of serious harm presented by [inmate attacker]" and "introduced no evidence indicating that he notified [the defendants] of any particularized threat by [his attacker] nor of any fear [he] felt [from this particular inmate]"); *see McBride v. Rivers*, 170 F. App'x 648, 655 (11th Cir. 2006) (finding district court properly granted summary judgment to the defendants because the plaintiff "failed to show that the defendants had subjective knowledge of a risk of serious harm" because plaintiff merely advised he "had problems" with fellow inmate and was "in fear for [his] life"); *Chatham v. Adcock*, 334 F. App'x 281, 293–94 (11th Cir. 2009) (finding that a plaintiff "simply 'does not satisfy the subjective awareness requirement' [where he] did "not identif[y] any specific 'serious threat' from [fellow inmate]" or report any such threat to the defendants). Defendants are entitled to qualified immunity on this allegation of

deliberate indifference.

Finally, while Jacoby claims that he was "forced to choose between signing a living agreement or "go in a cell" after reporting the incident with Hogan, the unrefuted evidence reflects that Hogan was reassigned to another dorm after the incident in question. Assuming for the sake of argument that correctional officials gave Jacoby the option of signing a living agreement with Hogan, this would not be equivalent to forcing him to sign a living agreement. Under the circumstances, Jacoby has not shown that Defendants engaged in any conduct that rises to the level of deliberate indifference to a substantial risk to his safety. Defendants are entitled to qualified immunity on this claim. *See Gaines*, 871 F.3d at 1208–10; *cf. Swain v. Peterson*, 2016 WL 8603657, at *7 (N.D. Ala. Dec. 21, 2016) ("[Plaintiff's] willingness to sign the Living Agreement gave the defendants at least some assurance that the danger had passed. Whether their action in getting [Plaintiff] to sign the Living Agreement was enough [to ensure safety] raises only a question of negligence, not deliberate indifference."), *adopted*, 2017 WL 1076452 (N.D. Ala. Mar. 22, 2017).

## J.    Failure to Investigate

To the extent Jacoby's allegation that Defendant Gordon "refused to interview and stop the nonsense" amounts to a claim that Gordon improperly investigated his report about Hogan, this claim entitles him to no relief. "It is well-settled that § 1983 does not create a federal right or benefit; it simply provides a mechanism for enforcing a right or benefit established elsewhere." *See Okla. City v. Tuttle*, 471 U.S. 808, 816 (1985). Jacoby's claim that Gordon violated his constitutional rights by failing to investigate his report of inmate misconduct does not implicate any constitutional right because inmates have no

constitutional right to an investigation of any kind by government officials, much less one that the inmates deem to be appropriate. *See DeShaney v. Winnebago Cnty. Dept. of Soc. Servs.*, 489 U.S. 189, 196 (1989) ("The Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual."). Defendants are due to be granted summary judgment on this claim.

## K.   Property Claim

Jacoby's complaint arguably asserts a due process challenge to an alleged improper deprivation of his property upon his assignment to administrative segregation.   He is entitled to no relief on this claim.

> If the [property from Plaintiff's cell] was not returned because of [Defendants'] negligence, there has been no unconstitutional deprivation of property.   If [Defendants] intentionally refused to return the [property], plaintiff has not alleged a constitutional violation.   In *Hudson v. Palmer*[, 468 U.S. 517 (1984),] the Court ruled that an "unauthorized intentional deprivation of property by a state employee does not constitute a violation of the Due Process Clause . . . if a meaningful post-deprivation remedy for the loss is available."   It is essential to [the instant] complaint that it allege that [Defendants] acted without authorization.   If [Defendants] w[ere] acting pursuant to authorization, [their] actions would be within the outer perimeter of [their] duties and would not have violated any clearly established constitutional right and therefore [they] would be immune from suit.   Only if the complaint is construed as alleging that [Defendants] w[ere] acting in bad faith outside the scope of [their] duties can it evade the doctrine of official immunity.

*Rodriguez-Mora v. Baker*, 792 F.2d 1524, 1527 (11th Cir. 1986) (citing *Daniels v. Williams*, 474 U.S. 327 (1986); *Scheuer v. Rhodes*, 416 U.S. 232, 247–48 (1974); *Flinn v. Gordon*, 775 F.2d 1551, 1553 (11th Cir. 1985)); *see also Lindsey v. Storey,* 936 F.2d 554, 561 (11th Cir. 1991) (holding that "as long as some adequate post-deprivation remedy is

available, no due process violation has occurred"); *Holloway v. Walker*, 790 F.2d 1170, 1173–74 (5th Cir. 1986) (finding no breach of federally guaranteed constitutional rights, even where a high-level state employee intentionally engages in tortious conduct, as long as the state system as a whole provides due process of law); *Myers v. Klevenhagen*, 97 F.3d 91, 94–95 (5th Cir. 1996) (holding that the state is protected "from liability for failing to provide a pre-deprivation process in situations where it cannot anticipate the random and unauthorized actions of its officers" and that the complainant bears the burden of establishing that the state's post-deprivation remedy is inadequate).

The State of Alabama, through its Board of Adjustment, provides a meaningful post-deprivation remedy for Jacoby to seek redress for the loss of his property. *See* Ala. Code § 41-9-60, *et seq.* (establishing the Board of Adjustment "to provide a method of payment by the State of Alabama or any of its agencies, commissions, boards, institutions or departments to persons for injuries to person or property or for death occasioned by the State of Alabama or any of its agencies, commissions, boards, institutions or departments"). In light of this adequate state remedy, Jacoby's allegation that Defendants violated his due process rights by improperly depriving him of his personal property entitles him to no relief.

## L.    Verbal Harassment Claim

Jacoby complains that during her rounds of the restricted privileges dorm, Defendant Jones would "make smart mouth comments and smirk at him." Doc. 3 at 7. However, the law is settled that derogatory, demeaning, profane, threatening, or abusive comments an officer makes to an inmate—no matter how repugnant or unprofessional—

do not rise to the level of a constitutional violation. *See Hernandez v. Fla. Dep't of Corr.*, 281 F. App'x 862, 866 (11th Cir. 2008) (holding that inmate's claim of "verbal abuse alone is insufficient to state a constitutional claim"); *Edwards v. Gilbert*, 867 F.2d 1271, 1274 n.1 (11th Cir. 1989) (holding that mere verbal taunts, despite their distressing nature, directed at inmate by jailers do not violate inmate's constitutional rights); *Ayala v. Terhune*, 195 F. App'x 87, 92 (3rd Cir. 2006) ("[A]llegations of verbal abuse, no matter how deplorable, do not present actionable claims under § 1983."); *McBride v. Deer*, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001) (holding that acts "resulting in an inmate being subjected to nothing more than threats and verbal taunts do not violate the Eighth Amendment"). Defendants are entitled to summary judgment on this claim.

### III. CONCLUSION

In light of the foregoing, it is the RECOMMENDATION of the Magistrate Judge that:

1.      Defendants' motion for summary judgment (Doc. 31) be GRANTED;

2.      This case be DISMISSED with prejudice;

3.      Judgment be ENTERED in favor of Defendants;

4.      Costs be taxed against Plaintiff.

It is further ORDERED that **on or before August 28, 2018**, the parties may file objections. Any objections filed must specifically identify the factual findings and legal conclusions in the Magistrate Judge's Recommendation to which the parties object. Frivolous, conclusive or general objections will not be considered by the District Court.

Failure to file written objections to the proposed findings and recommendations in

the Magistrate Judge's report shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE on the 14th day of August, 2018.

GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE